BEFORE THE FIRST DIVISION, FEBRUARY 27, 1953

No. 57107.—A. Pines & Son, Inc., and W. J. Byrnes & Co. of N. Y., Inc. *v.* United States, protests 139072–K and 150711–K (New York).

MOLLISON, Judge: The merchandise the subject of these two protests, which were consolidated for the purposes of trial, consists of raw fox skins imported

from Sweden. Duty was assessed thereon at the rate of 35 per centum ad valorem under the provision in paragraph 1519 (c) of the Tariff Act of 1930, as modified by the supplemental trade agreement with Canada, T. D. 50295, for—

Silver or black fox furs or skins, dressed or undressed, not specially provided for.

The protest claim in each case is for free entry under the provision in paragraph 1681 of the same act for—

Furs and fur skins, not specially provided for, undressed.

Counsel have stipulated and agreed as follows:

That the skins contained in the packages covered by Entry 3537, enumerated in Schedule "A," hereto annexed and made a part hereof, are not in issue herein.

That the skins covered by Entry 3981 and contained in the packages enumerated in Schedule "B," hereto annexed and made a part hereof, are platinum fox skins similar in all material respects to those the subject of United States v. O. Brager-Larsen, 36 C. C. P. A. 1, C. A. D. 388.

That the only controversy in this case relates to the balance of the skins.

Schedules "A" and "B" will be attached to and made a part of our decision herein. In accordance with the first paragraph quoted above of the stipulation of counsel, judgment will issue dismissing protest 150711–K, covering entry 3537, insofar as it relates to the skins contained in the packages enumerated in schedule "A."

Accepting the second paragraph quoted above of the stipulation of counsel as establishing the facts therein recited, and following the authority of the ·cited case, judgment will issue sustaining the claim for free entry under paragraph 1681 made in protest 139072–K, covering entry 3981, insofar as it relates to the skins contained in the packages enumerated in schedule "B."

What here follows, therefore, relates to the merchandise referred to in the third paragraph, quoted above, of the stipulation of counsel, i. e., the skins covered by entries- 3537 and 3981 *not* contained in packages enumerated in schedules "A" and "B."

As has been noted, these skins were classified under the provision for "Silver or black fox furs or skins, dressed or undressed, not specially provided for." There does not seem to be any question but that the skins were raw or undressed, and that they were not black fox skins The issue, therefore, is whether they were silver fox skins or not.

In support of the negative of this issue, plaintiffs offered evidence tending to establish that the merchandise involved was similar in all material respects to that which was the subject of decision in *United States* v. *O. Brager-Larsen, supra.* The issue in that case was whether certain platina or platinum fox skins were dutiable under the provision for silver fox skins in paragraph 1519 (c), *supra,* or free of duty under the provisions of paragraph 1681, as here claimed by the plaintiffs.

The president of the importing corporation testified that he had been connected with the firm for about 25 years, during which time he had personally bought and sold silver fox pelts or skins, and that since 1939 or 1940, he had personally bought and sold platina or platinum fox skins. He testified that he had seen all of the skins involved, and, shown exhibits 1–A to 1–G in the *Brager-Larsen* case, *supra* (which were the official samples representing the merchandise imported in that case), he testified that the skins here involved were similar thereto.

The witness was shown consular invoice No. 110, covering certain of the skins here involved, wherein the merchandise is described as "raw furs of silver foxes (white-face)," and stated that the invoice did not properly describe the merchan-

dise; that the merchandise covered by that shipment was "definitely platina." He described the merchandise here involved as follows:

Their characteristics were that platina skins had white faces and the underfur was very light on them and in no way did they resemble the silver fox.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

They were whitish silver; whitish platinum; in fact, light underfur; white faces.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

&ast; &ast; &ast; the guard hair on them—the hair is white. [Tr. pp. 21–22.]

He further stated that exhibits 1–A, 1–B, 1–C, and 1–D out of exhibits 1–A to 1–G in the *Brager-Larsen* case, *supra*, had white faces.

Counsel for the plaintiffs moved the incorporation of the record in the *Brager-Larsen* case as part of the record herein, and the said motion was granted over the objection of counsel for the defendant.

On cross-examination, the witness stated that he recognized a fox which is known as a white face silver fox. Shown exhibit 9 in the *Brager-Larsen* case, he identified it as a "white face" but stated he would not class it as a white face silver fox. Shown exhibit 7 in the *Brager-Larsen* case, he identified it as a white-marked silver fox.

The witness testified that his firm was engaged in moving at the time of trial and that the records pertaining to the order of the merchandise at bar had been recently destroyed. Upon demand of counsel for the defendant, plaintiffs' counsel produced a commercial invoice, dated May 2, 1944, from the shipper of the merchandise at bar, covering identical quantities of merchandise at identical prices as shown on consular invoice No. 110, covering the merchandise here involved. The consular invoice refers to "order accepted May 2, 1944," so that it would appear that the merchandise referred to on the commercial invoice was the identical merchandise covered by the consular invoice. It was received in evidence over the objection of counsel for the plaintiffs as defendant's exhibit A. On the commercial invoice the skins here involved are described as "White Faces."

In support of the collector's classification of the merchandise as silver fox skins, defendant called to the stand Frederick Stubbe, the customs examiner who examined and passed the merchandise here in issue. Mr. Stubbe, whose experience in the examination of fur skins, including silver fox skins and platinum fox skins, covered some 15 years, testified that he examined all of the skins here in issue, and stated that they were not similar to exhibits 1–A to 1–G in the *Brager-Larsen* case. He stated that, in his opinion, the skins in issue were white face silver fox skins, and that the range of color in the skins in issue would be represented by the colors of exhibits 7 and 9 in the *Brager-Larsen* case.

Asked, on cross-examination, to give his description, as he recalled the physical characteristics, of the imported skins, Mr. Stubbe gave the following answer:

I would like to say that in describing 310 fox skins, the description would not necessarily cover every particular skin in that lot. I can give you a general description. I would say that the 310 skins were from a medium to a dark gray. That is a general, over-all color. That every one of them had a white nose. That every one had some white on the belly or stomach, as we say, on the underside. That on the back all the fur was composed of two types of fur, guard hair and an underfur and that the underfur was a uniformly medium gray to dark gray in color except around the rump, or rather around the throat and the back of the neck, where it was white. That the guard hair was white or light gray near the skin, near the leather of the skin, the pelt, and then had a black tip which sometimes ended in a further small white tip.

That was the predominant description. Of course, they would also have guard hair and black hair intermixed, but most of the hair was black and gray with white tips on some. (Tr. pp. 60–61.)

Upon examining the position of the plaintiffs in relation to the evidence, we find that plaintiffs rely upon evidence offered by them to establish that the skins

in issue were platina or platinum fox skins similar to those which were the subject of decision in the *Brager-Larsen* case, wherein it was held that the tariff term "silver * * * fox * * * skins" did not embrace platinum fox skins. Plaintiffs further and/or alternatively rely upon record evidence of the description of the skins in issue to establish that, whether or not the skins in issue were platina or platinum fox skins, they were, nevertheless, not silver fox skins. Plaintiffs further contend that any evidence tending to indicate that the skins in issue were known as white face silver fox skins would be immaterial in the determination of the issue, as the issue must be determined solely by the fact of whether or not the skins at bar conformed to the common definition of the term "silver fox," as outlined by our appellate court in its decision in the *Brager-Larsen* case.

We are of the opinion that on the question of whether or not the skins at bar were platina or platinum fox skins and/or were similar to those the subject of decision in the *Brager-Larsen* case, the plaintiffs failed to establish the affirmative of that question by a preponderance of the competent, material, and relevant evidence offered. The evidence bearing upon this point is the testimony of Mr. Pines and that of Mr. Stubbe. Both of these witnesses were equally well qualified to testify from experience with silver fox skins and platinum fox skins, and both had examined the skins in issue. Mr. Pines, for the plaintiffs, testified in the affirmative, and Mr. Stubbe, for the defendant, testified in the negative. The descriptions given by either or both of the witnesses are not complete enough to enable us to determine therefrom whether or not the skins in issue were, in fact, platina or platinum fox skins, a very detailed description of which is included in the opinion of our appellate court in the *Brager-Larsen* case. The plaintiffs had the burden of establishing the ultimate fact, and we hold that the burden of proof was not met.

On the question of whether or not the skins at bar were other than silver fox skins, we are of the opinion that the plaintiffs likewise failed to establish the affirmative of that issue by a preponderance of competent, material, and relevant evidence. Here, again, plaintiffs rely upon the descriptions of the merchandise by their witness Pines and by defendant's witness Stubbe. Defendant relies upon the description of the skins by witness Stubbe, as well as his identification thereof as white face silver fox skins, and the commercial and consular invoice descriptions.

The description of the skins actually imported as given by plaintiffs' witness Pines was rather meager, while that given by the defendant's witness Stubbe was more complete (although, as stated before, neither description, nor both together, was complete enough to determine whether the skins were or were not platina or platinum fox skins). A comparison of the two descriptions shows that they differ markedly. Pines described the underfur as "very light," and the guard hair as "white." Stubbe described the underfur as "uniformly medium gray to dark gray in color except * * * around the throat and the back of the neck, where it was white," and described the guard hair as "white or light gray near the skin, near the leather of the skin, the pelt, and then had a black tip which sometimes ended in a further small white tip. * * * Of course, they would also have guard hair and black hair intermixed, but most of the hair was black and gray with white tips on some."

Our appellate court, in the *Brager-Larsen* case, stated that the common meaning of the expression "silver fox" related to a fox the fur of which was *predominantly dark*. The terms "dark" and "light" are opposed—what is one is not the other—and in the scale of transition from one to the other there is some point or perhaps section of the scale which is neither dark nor light, but neutral.

How far, if at all, into the realm of "dark," general over-all colors identified as "medium to a dark gray" would go might ordinarily be a question difficult to

answer, but a more objective standard of what the witness meant by "medium to a dark gray" was provided by his comparison of the color range of the skins in issue to those of exhibits 7 and 9 in the *Brager-Larsen* case. The court has examined those skins, and would conclude that they are "predominantly dark."

We find, therefore, that the plaintiffs have not established that the skins at bar did not conform to the common meaning of the term "silver fox" as used in the tariff act. In so ruling, we have not taken into consideration the evidence urged by the defendant as proof of its contention that the merchandise in issue bears the appellation of "white face silver fox" and was so described on the commercial and consular invoices.

According to the evidence of both the plaintiffs and the defendant herein, there is such a fox known as a white face silver fox, and it is the contention of the plaintiffs that such a fox is not a silver fox within the meaning of the term as used in paragraph 1519 (c), *supra*.

We do not believe that either directly or by necessary implication our appellate court ruled in the *Brager-Larsen* case that white face silver fox skins were not silver fox skins for purposes of the tariff provision, and as such a ruling is not necessary to our conclusion herein, we make no finding in that regard. Our ruling herein is simply that the plaintiffs have failed to establish by a preponderance of the competent, material, and relevant evidence offered that the skins in issue are not silver fox skins.

Insofar as it relates to skins not contained in packages enumerated in schedules "A" and "B," each of the protests is therefore overruled, and judgment will issue accordingly.