BEFORE THE SECOND DIVISION, DECEMBER 30, 1953

**No. 57727.**—Acrow, Incorporated, and Frank P. Dow Co., Inc. *v.* United States, protest 168733–K (San Francisco).

FORD, Judge: The merchandise involved in this case was classified by the collector of customs as "Bldg. Shores, Mfgrs. of Metal, N. S. P. F.," and duty was levied thereon at the rate of 22½ percent ad valorem under the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. Plaintiffs claim said merchandise to be properly "dutiable at 15 percent under paragraph 372 and T. D. 51802, relating to machines, finished or unfinished, not specially provided for, or at 10 percent under paragraph 312 and T. D. 51802, relating to structural shapes of iron or steel."

While the latter claim is not abandoned, it was not insisted upon at the trial or in plaintiffs' brief, and, consequently, no evidence was offered to support that claim. Under the circumstances, the claim at 10 percent under paragraph 312 and T.D. 51802 need not be further considered in this decision.

The pertinent statutes, as modified, *supra,* are as follows:

PAR. 397. Articles or wares not specially provided for, whether partly or wholly manufactured:

Composed wholly or in chief value of iron, steel * * *.

| * | * | * | * | * | * |
|---|---|---|---|---|---|

Other * * *------------------------------------------22½% ad val.

PAR. 372. Machines, finished or unfinished, not specially provided for:

| * | * | * | * | * | * |
|---|---|---|---|---|---|

Other * * *------------------------------------------15% ad val.

At the trial, a catalog distributed throughout the United States under which the plaintiffs sell the involved merchandise, was admitted in evidence as exhibit 1. Illustrative exhibit 2 is a model of the involved merchandise. Illustrative exhibit 3 is a sample of the involved merchandise. Illustrative exhibit 4 is a magazine entitled "Construction Illustrated," dated March 1950. Collective illustrative exhibit 5 consists of two photographs depicting an attachment which permits the shore to be placed on an angle with a leeway. Collective illustrative exhibit 6 consists of four photographs which indicate shores with certain attachments showing the application of a new invention, as illustrated in collective illustrative exhibit 5. According to one witness, this invention is American made.

The principal witness who testified for the plaintiffs was Roland De Vigier, who was in charge of Acrow, Incorporated, of New York, which company imports equipment from England, including shores and props. After learning how the imported shores are produced in England, by working at different machines in the factory, witness De Vigier came to this country and worked as a salesman for the company, then as branch manager, and later became vice president, and is now in charge of the Venezuelan and Brazilian companies, as well as the American company.

The witness described how these shores were used as jacks on certain jobs to raise or lower the very heavy panels or forms into which concrete was to be poured, the jacks thus bringing them into alignment. He also stated that on jobs the shore is more frequently referred to as a jack. A wall could be pushed or could be brought back by turning the handle of the shore or jack. The forms that were moved on one job were 30 feet high and extremely heavy. When concrete is poured into the form, terrific pressure is exerted, requiring another adjustment. When the involved shore is used, this situation is taken care of by jack action in the shore.

With reference to the square-cut threads in these shores, the witness testified as follows:

Q. And, what about the square cut feature of the threads, does that have anything to do with it?—A. This has to do, in being a square cut, when this gets a lot of load.

Q. When you say this, you mean the inner column that contains the pin?—A. When the inner column gets the load, it transfers to the pin and the pin transfers the load to the column. We call it nut. Now, the nut transfers the weight to a square cut, that means to a flat. It avoids slipping.

Q. In other words, if it were an angular cut, there would be a tendency to cut?—A. If you would push on an ordinary thread like the plumber uses, it would slip; it may slip; in some instances, it could slip.

Q. In other words, the square cut presents a square surface where there is greater fix and less tendency to slip out?—A. No tendency at all.

Q. I mean the square cut thread has no tendency whereas the angular thread cut does have?—A. Yes.

Q. So that it is for the purpose of greater strength?—A. Yes.

Q. And ease in manipulation and movement, is that right?—A. Yes.

The witness further explained that in putting up steel frames, these shores jack one piece up to the level of another piece, so that they can be joined through a hole. On repair work, these jacks could be used to raise the roof while the walls were knocked out and replaced with new walls. The witness further testified that, in his opinion, these shores were mechanical contrivances for the transmission of motion. In this connection, the witness testified as follows:

A. In pushing this handle and collar around from left to right, if I stand in front of the shore, the strength that I am giving is transferred to the pin and the pin transfers this strength to the inner tube which results in a lifting action * * * which is desired.

Q. Now, your original action was it a lifting action or a pushing action as you pushed against the left lever, was that action horizontal to the ground?—A. Well, the action is horizontal but the result is lifting.

According to the record, the involved merchandise consists of two metal tubes, varying in length according to size, so constructed that one fits very closely inside the other. On the outside of the larger tube for a distance of approximately 12½ inches the tube has square-cut threads. A nut or collar, having a hinged handle with similarly cut threads, is screwed into the threads in the larger tube, and, when this handle is turned, the nut or collar travels up or down this tube, depending on the direction in which the handle is turned, thus transforming motion which is imparted in a horizontal direction into vertical motion. For a distance of more than 12 inches, slots approximately ½ inch wide have been cut lengthwise in the larger tube, extending partially through the threaded portion thereof. Through opposite sides of the smaller tube have been drilled a number of holes for the reception of a metal pin. On the opposite ends of the two tubes have been securely fastened two metal plates, approximately ⅜ inch thick and 7 inches square. In these two metal plates are four small holes. By placing the pin in the proper position, either above or below the nut or collar, and turning the nut or collar, these jacks would operate to push or pull. For the purpose of pulling, the witness stated that the four small holes in the two metal end plates were used to nail these ends to the wall or other object to be pulled. Up or down motion imparted to the steel nut or collar, forcing it to travel along the threads, is immediately transferred to the pin and the inner column to which it is attached. Any load resting on top of the plate at the end of the inner column is thus raised or lowered.

In support of its contention that the involved merchandise is a machine, counsel for the plaintiffs cite us to the cases of *United States* v. *Guth Stern*, 21 C. C. P. A. (Customs) 246, T. D. 46777; *United States* v. *J. E. Bernard*, 30 C. C. P. A. (Customs) 213, C. A. D. 235; *United States* v. *Laing*, 21 C. C. P. A. (Customs) 235,

T. D. 46763; *Hopes Windows* v. *United States*, 6 Cust. Ct. 401, C. D. 503; *Braun* v. *United States*, 65 Treas. Dec. 387, T. D. 46938; *De Pompei* v. *United States*, 2 Cust. Ct. 620, Abstract 40825; *Osmers* v. *United States*, 47 Treas. Dec. 904, Abstract 48549; and *United States* v. *Dyson Shipping Co.*, 29 C. C. P. A. (Customs) 148, C. A. D. 184.

In the *Stern* case, *supra*, the Court of Customs and Patent Appeals held as follows:

A careful analysis of this court's opinion in the *Simon, Buhler & Baumann* case, *supra* [8 Ct. Cust. Appls. 273, T. D. 37537], will disclose that the court was not there confronted with the necessity of attempting to lay down any precise and all-inclusive definition of the term "machine" for tariff purposes, nor does the opinion itself purport to do so. It merely recites certain characteristics of a machine as that term and certain associated terms are defined in the standard authorities there cited, for the sole purpose of negativing the contention there made by the Government that a brewery mash filter was a machine.

In headnoting the case, the reporter, utilizing the language used in the text of the opinion, stated the definition affirmatively, and it has since been often quoted by this court, and by the Customs Court, in various cases, in the form adopted by the reporter.

There is no intention of here intimating that the definition, insofar as there stated, is inaccurate. Upon the contrary, it has been consistently adhered to by us, and, by implication at least, it received legislative endorsement, particularly in the Tariff Act of 1930. *Vide* Summary Tariff Information 1929, volume 1, page 841.

However, it has never been the purpose of this court to hold arbitrarily that the definition is so rigid and exact in its terms as to include any and all devices and mechanisms that may happen to be literally embraced within it. An examination of numerous definitions given in the very authorities cited in the *Simon, Buhler & Baumann* case, *supra*, discloses distinctions which should be taken as matters of common knowledge. For example, in Webster's New International Dictionary, it is said:

\* \* \* According to the strict definition, a crowbar abutting against a fulcrum, a pair of pliers in use, or a simple pulley block with its fall, would be a machine, but ordinary usage would hardly include such as these; while an implement or tool whose parts have no relative movement, as a hammer, saw, chisel, plane, or the like, would not, of itself, in any case be a machine. Popularly and in the wider mechanical sense, a machine is a more or less complex combination of mechanical parts, as levers, cog and sprocket wheels, pulleys, shafts, and spindles, ropes, chains, and bands, cams and other turning and sliding pieces, springs, confined fluids, etc., together with the framework and fastenings supporting and connecting them, as when it is designed to operate upon material to change it in some preconceived and definite manner, to lift or transport loads, etc.

The merchandise in the *Stern* case, *supra*, consisted of devices for sharpening safety-razor blades. In 1925, this court had held a device for honing and stropping safety-razor blades to be classifiable as a machine under paragraph 372 of the Tariff Act of 1922. When the Congress was enacting paragraph 372 of the Tariff Act of 1930, the above decision was specifically called to the attention of Congress. It, nevertheless, reenacted paragraph 372 of the Tariff Act of 1922 as paragraph 372 of the Tariff Act of 1930 without any material change. The *Stern* case, *supra*, was "determined by the application of the familiar rule relating to legislative ratification of judicial interpretation," and the merchandise was held dutiable as a machine.

The *Bernard* case, *supra*, involved the proper classification of certain field balances which had been classified as scientific instruments under paragraph 360 of the Tariff Act of 1930, and were claimed dutiable as machines, not specially provided for, under paragraph 372 of the same act. In holding the merchandise to be a machine, the Court of Customs and Patent Appeals observed that:

* * * It is our opinion that a machine such as Congress had in mind must have some movable parts, and it must do some of the things pointed out in the *Simon, Buhler* case. We have so held in decisions hereinafter referred to.

The involved merchandise has movable parts and does some of the things pointed out in the *Simon, Buhler* case. The merchandise in the *Osmers* case, *supra*, was described by the court as follows:

The jacks in question were found to be the well-known mechanism used as accessories to automobiles in lifting them for an exchange of tires and like purposes.

The merchandise in the *Osmers* case was held to be machines, not specially provided for, under paragraph 372 of the Tariff Act of 1922. In the case of *United States* v. *Dyson Shipping Co., Inc., et al.*, 29 C. C. P. A. (Customs) 148, C. A. D. 184, in holding dental chairs to be machines, the Court of Customs and Patent Appeals employed the following language:

It is our opinion that the involved chairs are "machines" within the meaning of that term as used in paragraph 372 of the Tariff Act of 1930.

This conclusion is, in our opinion, supported by the fact that in the Summary of Tariff Information 1929, pp. 841–842, under the heading of "Decisions" respecting paragraph 372 of the Tariff Act of 1922, the attention of Congress was called to the fact that *"Morris hoist blocks*, used in lifting objects," were in T. D. 41196 held by the Board of General Appraisers now the United States Customs Court) to be parts of machines under paragraph 372 of the Tariff Act of 1922, although the hoists of which they were a part were operated by hand (p. 842).

Also in said Summary of Tariff Information, on page 841, the attention of Congress was called to the fact that the Board of General Appraisers had held that automobile jacks were classifiable as machines under paragraph 372 of the Tariff Act of 1922 (Abstract 48549.)

Although as stated above the attention of Congress was called to these decisions, paragraph 372 of the Tariff Act of 1930 was enacted without any provision for excluding from the term "machines" articles the subject of such decisions.

We do not here invoke the doctrine of legislative adoption of judicial decision as applied to the chairs before us, but the fact that Congress did not see fit, after the rendering of such decisions to limit the meaning of the term "machines," as used in paragraph 372 of the Tariff Act of 1930, is persuasive to us of the correctness of our conclusion that the chairs here involved were correctly held by the trial court to be machines classifiable under paragraph 372.

Since the Morris hoist blocks, used in lifting objects, were held to be machines in T. D. 41196, and since jacks, being the well-known mechanism used as accessories to automobiles in lifting them for an exchange of tires and like purposes, were held to be machines in Abstract 48549, and both of these decisions were called to the attention of Congress prior to the passage of paragraph 372 of the Tariff Act of 1930, we see no escape from the conclusion that the involved jacks or building shores are machines. The involved building shores or jacks are something more than a "crowbar," or a "pair of pliers." They have some movable parts and do some of the things pointed out in the *Simon, Buhler* case. They are mechanical contrivances which utilize and apply force for the transmission of motion.

The definition of a machine, approved in the *Simon, Buhler* case, should not be held to include all devices and mechanisms. However, articles like those here involved are not excluded from the definition of a "machine," but are clearly embraced within it, for they comprise a complex combination of mechanical parts, one of the purposes of which is to lift loads.

For the reasons stated, and following the authorities cited, we hold the building shores or jacks here involved, which were assessed with duty at 22½ percent ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, as manufactures of metal, not specially

provided for, to be properly classifiable as machines, not specially provided for, under paragraph 372 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, and dutiable accordingly at 15 percent ad valorem, as alleged by the plaintiffs.

To the extent indicated, the specified claim in this suit is sustained; in all other respects and as to all other merchandise all claims are overruled. Judgment will be rendered accordingly.