**No. 59420.**—P. H. De Wilde and Harper, Robinson & Co. *v.* United States, protest 221926–K (San Francisco).

FORD, Judge: The merchandise the classification of which is involved in this suit was classified by the collector as "Vices, classified as hand tools," under paragraph 396 of the Tariff Act of 1930 and duty levied thereon at the rate of 45 percent ad valorem. Plaintiffs claim said merchandise to be properly dutiable at 15 percent ad valorem under paragraph 372 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, as machines, not specially provided for, "Other," or at the rate of 22½ percent ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by the said general agreement, *supra*, as articles, not specially provided for, composed wholly or in chief value of iron or steel, but not plated with platinum, gold, or silver, or colored with gold lacquer, "Other."

It was agreed between counsel at the trial that the merchandise in question is composed in chief value of metal, other than lead, tin, tin plate, gold, platinum, or silver, and that it is not plated with gold, silver, or platinum, and not covered with gold lacquer.

As supporting their position herein, counsel for the plaintiffs offered the testimony of Peter H. De Wilde, who stated that he was the importer of the involved merchandise and saw it after it arrived; that a leaflet, entitled "Sevo—The Multiple Jaw Universal Screw Vice," depicts the merchandise in question. This leaflet was received in evidence as plaintiffs' exhibit 1. The witness testified with reference to the uses of the involved merchandise:

We claim that this vise holds an object rigid to be machined, such as used for milling, or grinding or tapping purposes.

In explaining the difference between an ordinary vise and the Sevo, the witness stated:

* * * an ordinary vise has two straight sets of jaws where this sevo vise has three sets of laminated jaws which are independently hinged so as to give a three

point suspension compared to a two point suspension with a conventional type of vise. * * * The vise is particularly suited to hold a nut-shaped object. * * * the jaws are so arranged that through laminations they go around the work and can then be locked like cams in a rigid position so as to furnish a jig for small products.

The witness further testified that the vise cannot very well be used without bolting down to a milling table or a drill press and that the weight of the sizes of the Sevo runs from about 14 pounds for No. "I" to 143 pounds for the No. "III."

In explaining the operation of these vises, the witness testified that:

The operator operates the crank handle which in turn slides the jaws, the jaws adjust themselves around the shaped object, around the piece to be worked and then are bolted by cam action by way of handles and an eccentric and from there on in after the jaws are set, he only moves the set of jaws to facilitate the taking out of the work piece.

The witness further testified that, after the vise has been set by hand, there is nothing else done to it while it is in use; that the object of the vise is to hold an object or workpiece, so it can be machined upon; that he had seen other kinds of vises in operation, "we have what is called a pin vise which is not bolted down but is entirely held by hand; for that purpose it has either a metallic or wooden hand grip. * * * Those vises because they are entirely handled by hand or in the hand, are of light weight, of let's say, one and a half pounds or two pounds."

Paragraph 396 of the Tariff Act of 1930, under which the involved merchandise was classified and assessed with duty, reads as follows:

PAR. 396. Drills (including breast drills), bits, gimlets, gimlet-bits, countersinks, planes, chisels, gouges, and other cutting tools; pipe tools, wrenches, spanners, screw drivers, bit braces, vises, and hammers; calipers, rules, and micrometers; all the foregoing, if hand tools not provided for in paragraph 352, and parts thereof, wholly or in chief value of metal, not specially provided for, 45 per centum ad valorem.

Since it is established that the involved merchandise consists of vises, which are *eo nomine* provided for in said paragraph 396, "if hand tools not provided for in paragraph 352," it is first necessary to determine whether or not these vises are hand tools, not provided for in paragraph 352. Paragraph 352, after providing *eo nomine* for a number of items, contains the following:

* * * The foregoing rates shall apply whether or not the articles are imported separately or as parts of or attached to machines, but shall not apply to holding or operating devices.

The only function of the involved vises is to "hold." They, therefore, fall squarely within the language of said paragraph 352, excluding from the provisions of that paragraph "holding * * * devices." The next question is: Are these vises hand tools? As supporting their contention that these vises are not hand tools, plaintiffs quote the following definition of a hand drill from Webster's New International Dictionary:

hand drill. a. A small portable drilling machine, resembling a breast drill, designed to be held and operated by hand.

In the Encyclopaedia Britannica, volume 22, page 286, we find the following:

In beginning a survey of tools it is necessary to draw the distinction between hand and machine tools. The former class includes any tool which is held and operated by the unaided hands; *e. g.*, a chisel, plane or saw.

In view of the fact that counsel have not cited to us, nor has our own research revealed any judicial definition of a hand tool, we shall accept for the purpose of this case the definition of that term, quoted above from the Encyclopaedia Britannica. Under the above definition, the involved vises are not hand tools,

because they are not held and operated by the unaided hands, but, as stated by the witness, they are "bolted down to a milling table or a drill press." Furthermore, it would scarcely appear feasible to hold and operate by the unaided hands a tool which weighed from 14 pounds to 143 pounds. On the other hand, "we have what is called a pin vise which is not bolted down but is entirely held by hand; for that purpose it has either a metallic or wooden hand grip," which weighs from 1½ to 2 pounds.

The involved merchandise not being vises, which are hand tools not provided for in paragraph 352, it is clear the collector erred in so classifying them.

In view of the facts established by the record in this case, we are inclined to feel that our conclusion should be governed by the reasoning and authorities set out in the case of *Acrow* v. *United States*, 30 Cust. Ct. 356, Abstract 57727. In that case, we said:

> In the *Stern* case, *supra* [*United States* v. *Guth Stern*, 21 C. C. P. A. (Customs) 246, T. D. 46777], the Court of Customs and Patent Appeals held as follows:
>
>> A careful analysis of this court's opinion in the *Simon, Buhler & Baumann* case, *supra* [8 Ct. Cust. Appls. 273, T. D. 37537], will disclose that the court was not there confronted with the necessity of attempting to lay down any precise and all-inclusive definition of the term "machine" for tariff purposes, nor does the opinion itself purport to do so. It merely recites certain characteristics of a machine as that term and certain associated terms are defined in the standard authorities there cited, for the sole purpose of negativing the contention there made by the Government that a brewery mash filter was a machine.
>>
>> In headnoting the case, the reporter, utilizing the language used in the text of the opinion, stated the definition affirmatively, and it has since been often quoted by this court, and by the Customs Court, in various cases, in the form adopted by the reporter.
>>
>> There is no intention of here intimating that the definition, insofar as there stated, is inaccurate. Upon the contrary, it has been consistently adhered to by us, and, by implication at least, it received legislative endorsement, particularly in the Tariff Act of 1930. *Vide* Summary Tariff Information 1929, volume 1, page 841.
>>
>> However, it has never been the purpose of this court to hold arbitrarily that the definition is so rigid and exact in its terms as to include any and all devices and mechanisms that may happen to be literally embraced within it. An examination of numerous definitions given in the very authorities cited in the *Simon, Buhler & Baumann* case, *supra*, discloses distinctions which should be taken as matters of common knowledge. * * *

\* \* \* . \* \* \* \* \*

The merchandise in the *Stern* case, *supra*, consisted of devices for sharpening safety-razor blades. In 1925, this court had held a device for honing and stropping safety-razor blades to be classifiable as a machine under paragraph 372 of the Tariff Act of 1922. When the Congress was enacting paragraph 372 of the Tariff Act of 1930, the above decision was specifically called to the attention of Congress. It, nevertheless, reenacted paragraph 372 of the Tariff Act of 1922 as Paragraph 372 of the Tariff Act of 1930 without any material change. The *Stern* case, *supra*, was "determined by the application of the familiar rule relating to legislative ratification of judicial interpretation," and the merchandise was held dutiable as a machine.

The *Bernard* case, *supra* [*United States* v. *J. E. Bernard*, 30 C. C. P. A. (Customs) 213, C. A. D. 235], involved the proper classification of certain field balances which had been classified as scientific instruments under paragraph 360 of the Tariff Act of 1930, and were claimed dutiable as machines, not specially provided for, under paragraph 372 of the same act. In holding the merchandise to be a machine, the Court of Customs and Patent Appeals observed that:

> * * * It is our opinion that a machine such as Congress had in mind must have some movable parts, and it must do some of the things pointed out in the *Simon, Buhler* case. We have so held in decisions hereinafter referred to

The involved merchandise has movable parts and does some of the things pointed out in the *Simon, Buhler* case. The merchandise in the *Osmers* case, *supra* [*Osmers* v. *United States*, 47 Treas. Dec. 904, Abstract 48549], was described by the court as follows:

> The jacks in question were found to be the well-known mechanism used as accessories to automobiles in lifting them for an exchange of tires and like purposes.

The merchandise in the *Osmers* case was held to be machines, not specially provided for, under paragraph 372 of the Tariff Act of 1922. In the case of *United States* v. *Dyson Shipping Co., Inc., et al.*, 29 C. C. P. A. (Customs) 148, C. A. D. 184, in holding dental chairs to be machines, the Court of Customs and Patent Appeals employed the following language:

> It is our opinion that the involved chairs are "machines" within the meaning of that term as used in paragraph 372 of the Tariff Act of 1930.
>
> This conclusion is, in our opinion, supported by the fact that in the Summary of Tariff Information 1929, pp. 841–842, under the heading of "Decisions" respecting paragraph 372 of the Tariff Act of 1922, the attention of Congress was called to the fact that *"Morris hoist blocks*, used in lifting objects," were in T. D. 41196 held by the Board of General Appraisers (now the United States Customs Court) to be parts of machines under paragraph 372 of the Tariff Act of 1922, although the hoists of which they were a part were operated by hand (p. 842).
>
> Also in said Summary of Tariff Information, on page 841, the attention of Congress was called to the fact that the Board of General Appraisers had held that automobile jacks were classifiable as machines under paragraph 372 of the Tariff Act of 1922 (Abstract 48549).
>
> Although as stated above the attention of Congress was called to these decisions, paragraph 372 of the Tariff Act of 1930 was enacted without any provision for excluding from the term "machines" articles the subject of such decisions.
>
> We do not here invoke the doctrine of legislative adoption of judicial decision as applied to the chairs before us, but the fact that Congress did not see fit, after the rendering of such decisions to limit the meaning of the term "machines," as used in paragraph 372 of the Tariff Act of 1930, is persuasive to us of the correctness of our conclusion that the chairs here involved were correctly held by the trial court to be machines classifiable under paragraph 372.

Since the Morris hoist blocks, used in lifting objects, were held to be machines in T. D. 41196, and since jacks, being the well-known mechanism used as accessories to automobiles in lifting them for an exchange of tires and like purposes, were held to be machines in Abstract 48549, and both of these decisions were called to the attention of Congress prior to the passage of paragraph 372 of the Tariff Act of 1930, and said paragraph 372, having been enacted without any provision for excluding from the term "machines" articles the subject of such decisions, we see no escape from the conclusion that the involved vises are machines. These vises are something more than a crowbar or a pair of pliers. They have some movable parts and do some of the things pointed out in the *Simon, Buhler* case. They are mechanical contrivances for utilizing, applying, or modifying energy or force, or for the transmission of motion.

The definition of a machine, approved in the *Simon, Buhler* case, should not be held to include any and all devices and mechanisms. However, articles like those here involved are not excluded from the term "machines," but are clearly embraced within it, because they comprise a complex combination of mechanical parts, the only purpose of which is to utilize, apply, or modify energy or force.

For the reasons stated and following the cited authorities, we hold the involved vises, invoiced as SEVO type I and SEVO type II, which were assessed with duty at 45 percent ad valorem under paragraph 396 of the Tariff Act of 1930, to be

properly dutiable at 15 percent ad valorem under paragraph 372 of the Tariff Act of 1930, as modified by T. D. 51802, as alleged by the plaintiffs.

To the extent indicated, the specified claim in this suit is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.