**No. 61375.**—Acrow, Incorporated, and James Loudon & Co., Inc. *v.* United States, protests 282063–K and 271086–K (Los Angeles).

RAO, Judge: The two protests herein involved, which have been consolidated for the purposes of trial, challenge the action of the collector of customs at the port of Los Angeles in classifying certain bracing plates or clips within paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, as articles not specially provided for, composed of steel, not plated, and in assessing duty thereon at the rate of 22½ per centum ad valorem.

It is claimed in said protests that the articles in question are parts of machines, not specially provided for, dutiable at the rate of 13¾ per centum ad valorem, by virtue of paragraph 372 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739.

The foregoing provisions, insofar as here pertinent, read as follows:

Paragraph 397, as modified by T. D. 51802, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

  \*  \*  \*  \*  \*  \*  \*

 Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

   \*  \*  \*  \*  \*  \*  \*

  Other (except slide fasteners and parts thereof)____ 22½% ad val.

Paragraph 372, as modified by T. D. 52739, *supra*:

Machines, finished or unfinished, not specially provided for:

  \*  \*  \*  \*  \*  \*  \*

 Other (except the following: accounting machines; bakery machines; calculating machines; combination candy cutting and wrapping machines; combination cases and sharpening mechanisms for safety razors; cordage machines; food cutting or grinding machines; hydraulic impulse wheels and hydraulic reaction turbines; industrial cigarette making machines; internal-combustion engines of the noncarburetor type; machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for manufacturing chocolate or confectionery; machines for packaging pipe tobacco; machines for wrapping candy; machines for wrapping cigarette packages; and tobacco cutting machines) _____ 13¾% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part:

  \*  \*  \*  \*  \*  \*  \*

Other_____ The rate for the article of which they are parts

The only witness in this case was James C. Frush, an employee of Acrow, Incorporated (hereinafter called Acrow), since 1949, who testified on behalf of plaintiffs. This witness has had considerable experience in the construction industry for many years and has distributed Acrow's products throughout most of the United States. He referred to the importation, a sample of which is in evidence as plaintiffs' illustrative exhibit 1, as bracing clips, for use in connection with building shores. They are also used for handrailings on scaffold uprights at extended heights, when standard handrail fittings for scaffolds are not available.

Frush described building shores, which he stated are used to support temporary formwork until concrete is set, as follows:

Yes, the building shore—this insert tube is one and a-half inches in outside diameter insert bracing tube a fraction over 1½″, just to allow enough space to go up and down with a 6″ malleave [sic] iron collar, a ring pin, and a chain for adjustment, and your adjustment point is at 6″ intervals—in other words, if you were to extend the shore to a fourteen foot height, most of the insert tube would be out, protruding beyond the six foot piece, which is what brought these bracing plates into the picture.

The bracing clip, according to this witness, is normally attached about 6 inches above the final adjustment point, where the shore is usually the weakest. There, it serves two purposes, "to brace the insert tube to the shore, and it sets up a temporary scaffold so that the workers can make their final adjustment on their beams."

The testimony indicates that the instant angle bracing plates or clips are not used on all jobs where Acrow's building shores are employed, but only under the following circumstances:

On box girder construction, on state highway work in particular, with emphasis on their use where there are curves, banks, cloverleafs, under bridges, or where the shore is doubled-decked, there are many cases where the shore is double-decked and you have a bracing clip on the top insert tube and a bracing clip on the bottom insert tube, so that you have two-way diagonal bracing.

\*      \*      \*      \*      \*      \*      \*

In order to avoid possible side-sway and slippage on the transverse formwork, they are used in highway construction.

On cross-examination, the witness stated that building shores themselves are equipped with thick bracing plates, welded to the base, which are similar to plaintiffs' illustrative exhibit 1, except for the screw adjustment. When the type of construction necessitates the use of the imported plates for timber bracing, the opening or neck of the clip is fitted around the insert tube, and timber is placed between the tube and the face of the plate, the two-wing nut adjustments on the back of the plate allowing for the thickness of the lumber.

When the plates are used for scaffold handrails, they are fastened to the vertical of the scaffold in the same manner as they are to the insert tube of the shore. The latter is, however, an exclusive and separate operation, and the shore itself is entirely capable of use without the attachment of plaintiffs' illustrative exhibit 1. Moreover, the clips are not furnished to the importer with the shores, but must be specially ordered.

It is the contention of plaintiffs that the *"adjustable clip is an integral, component part of the basic shore to which it is attached, without which the machine will not perform one of its important functions."* [Italics quoted.] The cases of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851; *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872; *F. T. Griswold Mfg. Co.* v. *United States*, 36 Cust. Ct. 27, C. D. 1749; *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434; *United American Bosch Corp.* v. *United States*, 1 Cust. Ct. 1, C. D. 1; and *J. E. Bernard & Company, Inc.* v. *United States*, 30 Cust. Ct. 473, Abstract 57385, are cited in support of that contention.

Counsel for the Government urges that the imported articles are accessories and not parts of machines, for the reason that building shores will perform their ordinary functions without the bracing clips, and the clips themselves have a use which is exclusive of the shores.

The rule of law which has long served as a guide in resolving the question of what constitutes a "part" of an article for tariff purposes is that expressed in the case of *United States* v. *Willoughby Camera Stores, Inc., supra*, as follows:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* [Italics quoted.]

Of course, in order to determine whether the articles at bar are integral constituents of building shores, without which building shores could not perform all the normal operations for which they are adapted and designed, it becomes necessary to consider the nature and character of building shores, *per se*. Concerning this aspect of the case, the record as here made presents no clear picture, although the parties seem not to dispute the fact that Acrow building shores are machines.

Indeed, this court has so held in the case of *Acrow, Incorporated, et al.* v. *United States*, 32 Cust. Ct. 356, Abstract 57727. While the record in said case has not been incorporated herein, the trial judge having sustained defendant's objection to such application, and, we might add, quite properly, we find in our decision therein a description of an Acrow building shore which we regard as enlightening. We there stated:

According to the record, the involved merchandise consists of two metal tubes, varying in length according to size, so constructed that one fits very closely inside the other. On the outside of the larger tube for a distance of approximately 12½ inches the tube has square-cut threads. A nut or collar, having a hinged handle with similarly cut threads, is screwed into the threads in the larger tube, and, when this handle is turned, the nut or collar travels up or down this tube, depending on the direction in which the handle is turned, thus transforming motion which is imparted in a horizontal direction into vertical motion. For a distance of more than 12 inches, slots approximately ½ inch wide have been cut lengthwise in the larger tube, extending partially through the threaded portion thereof. Through opposite sides of the smaller tube have been drilled a number of holes for the reception of a metal pin. On the opposite ends of the two tubes have been securely fastened two metal plates, approximately ⅜ inch thick and 7 inches square. In these two metal plates are four small holes. By placing the pin in the proper position, either above or below the nut or collar, and turning the nut or collar, these jacks would operate to push or pull. For the purpose of pulling, the witness stated that the four small holes in the two metal end plates were used to nail these ends to the wall or other object to be pulled. Up or down motion imparted to the steel nut or collar, forcing it to travel along the threads, is immediately transferred to the pin and the inner column to which it is attached. Any load resting on top of the plate at the end of the inner column is thus raised or lowered.

It is thus apparent that in use Acrow building shores function in very much the same fashion as does the familiar automobile jack. They raise, lower, and support loads. Under the rule stated, *supra*, the question then arises whether the fulfillment of those operations depends in any essential manner upon the subject bracing clips.

The most that can be said of the proof in this case is that it shows that the imported articles assist, rather than implement, the function which a building shore subserves. That the shore can, and does, raise, lower, and support loads, by itself, without the attachment of the involved clips, is frankly admitted. What is accomplished by the clips is the bracing of the shore under certain circumstances of special types of construction work. The brace strengthens the shore and supports additional timber shoring which may be required on a particular construction job, but the shore performs its operations independently of the brace.

We perceive no substantial difference in principle between a tripod which supports a camera and holds it rigidly in position, as was the fact in *United States* v. *Willoughby Camera Stores, Inc.*, *supra*, and a plate which supports and strengthens a building shore and provides a place for the attachment of additional shoring material. "Each 'performs its separate function without loss of any of its essential characteristics.' Whether separate or joined, each is complete in itself, each is a distinct and separate commercial entity."

In the case of *United States* v. *Antonio Pompeo*, 43 C. C. P. A. (Customs) 9, C. A. D. 602, the court considered as important, in determining whether a super-

charger was a part of an automobile, the fact that the superchargers were "dedicated irrevocably for use upon automobiles," and further stated:

The cases cited by appellee, in our opinion, clearly indicate that where an article at time of importation is dedicated to a specific use, the question of whether the article is a part must be determined from the nature of the article as it is applied to that use.

Irrevocable dedication to a specific use is not here shown. On the contrary, the record reveals an alternative application for the involved clips entirely independent of the articles of which they are claimed to be parts. They are convenient and useful attachments for installing scaffold handrailings when standard handrail fittings are not available. That when so employed the clips serve as a temporary expedient does not necessarily imply that such use is either perverted or fugitive.

In the recent case of *United States* v. *Cody Manufacturing Co., Inc., Rohner Gehrig & Co., Inc.*, 44 C. C. P. A. (Customs) 67, C. A. D. 639, our appellate court, after reviewing many of the leading cases on the subject of parts, observed:

The foregoing authorities are uniform in applying the rule that an element which is not essential to the operation of an article for its intended purpose is not a part of that article.

See also *United States* v. *E. Leitz, Inc.*, 26 C. C. P. A. (Customs) 418, C. A. D. 49; *M. Oppleman, Inc.* v. *United States*, 3 Cust. Ct. 227, C. D. 240.

Inasmuch as the subject bracing clips are neither essential to the ordinary functioning of building shores, nor dedicated exclusively to use in connection therewith, they are not parts of machines for tariff purposes. The claim in the protests to that effect is, therefore, overruled.

Judgment will be entered accordingly.

DISSENTING OPINION

Ford, Judge: The record in this case has been fairly summarized in the majority opinion, so it will not be necessary for me to repeat the same here, except I wish to emphasize the following testimony:

Q. How have you seen these clips used, Mr. Frush?—A. Well, for example, the bracing plate that Mr. Weil refers to is on the bracing of the shore which is for bracing—this bracing clip, Plaintiff's Illustrative Exhibit #1—is on the upper part or insert tube of the shore or its weakest part, or where the strain is the greatest, it is never used on the bracing of the shore. (R. 11.)

\*      \*      \*      \*      \*      \*      \*

Q. Will you describe at which point·the bracing clip, Plaintiff's Illustrative Exhibit #1, is placed on the shore?—A. Normally about 6″ above the final adjustment point, or where the insert tube is set in the base of the shore which is the weak point of the shore—it all depends—in hand work, the bracing clip serves two purposes, to brace the insert tube to the shore, and it sets up a temporary scaffold so that the workers can make their final adjustment on their beams.

Q. Is this necessary in addition to the permanently affixed bracing plate which is also found on the shore?—A. Not on all jobs, no, sir. (R. 13.)

\*      \*      \*      \*      \*      \*      \*

Q. Do you know of your own personal knowledge instances where the angular bracing clip must be used?

\*      \*      \*      \*      \*      \*      \*

A. Yes, definitely.

Q. Will you describe the circumstances under which the angle bracing clip, Plaintiff's Illustrative Exhibit #1 must be used?—A. On box girder construction, on state highway work in particular, with emphasis on their use where there are curves, banks, cloverleafs, under bridges, or where the shore is double-decked,

there are many cases where the shore is double-decked and you have a bracing clip on the top insert tube and a bracing clip on the bottom insert tube, so that you have two-way diagonal bracing.

Q. Would it be possible in any of these examples which you have just stated, to use the shore without the bracing clip?

\* \* \* \* \* \* \*

A. In order to avoid possible side-sway and slippage on the transverse form-work, they are used in highway construction. (R. 14–15.)

Based upon the facts in this case, I feel that the decisions in *United States* v. *Antonio Pompeo*, 43 C. C. P. A. (Customs) 9, C. A. D. 602, and *Peter J. Schweitzer* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, are controlling as to the correct conclusion to be reached here.

The merchandise involved in the *Pompeo* case was described by the Court of Customs and Patent Appeals as follows:

The present importation consists of sixty "superchargers" which are devices used to increase the power of automobile engines by, in general, increasing the pressure at which the gasoline-air mixture is fed into the motor. Forty of the imported superchargers are designed for installation in Ford engines (or in Mercury engines which have the same block), and the other twenty for installation in Austin engines. The undisputed testimony indicates that the imported superchargers are designed specifically for use on automobiles; that extensive alterations in the engines are necessary to install the superchargers; that Ford automobiles and Austin automobiles as manufactured do not have superchargers; that some makes of automobiles have been manufactured with superchargers; that superchargers are made for automobiles other then Fords or Austins, and are also sometimes installed on trucks and busses; that the Ford engine and the Austin engine will operate if no supercharger has been installed therein; and that once a supercharger has been installed in a Ford or Austin engine the engine will not operate if the supercharger fails.

Based upon the foregoing facts, the appellate court held as follows:

The cases cited by appellee, in our opinion, clearly indicate that where an article at time of importation is dedicated to a specific use, the question of whether the article is a part must be determined from the nature of the article as it is applied to that use. In the *Zeiss* case, *supra*, the court said, "In the case at bar, where a camera for which the finders represented by Exhibits A and B are designed is equipped with a lens and its corresponding finder, *then* the finder is necessary to the completion of the camera and is 'an integral, constituent, or component part, without which the article to which it is \* \* \* joined, could not *function as such article.*'" (First emphasis added.) The court did not consider whether the involved finders were parts of cameras considered *in vacuo*, but whether they were parts of cameras when they were applied to their intended use on the cameras. Similarly, in the *Stoeger* case, *supra*, the court did not consider whether pistols would operate without the drum magazine, for it was clear that pistols would fire with the regular magazine with which it was normally equipped. Rather, the court considered the function played by the drum magazine as it was placed in use upon the pistol, and determined that at that time it was a part of the pistol. [Italics quoted.]

The *Schweitzer* case, *supra*, is equally convincing that the subject merchandise should be classified as parts of machines, not specially provided for. The holding in that case is epitomized in the following quotation from the syllabus:

1. "ENDLESS BELTS" FOR USE ON PAPER-MAKING MACHINES—DUTIABILITY.

Finished articles in the form of "endless belts," composed of wool and ordered and delivered according to specifications for use on a Fourdrinier paper-making machine in the manufacture of "tissue grade" paper, are an integral part of the machine and dutiable as "parts" of "machines \* \* \* not specially provided for" under paragraph 372 of the Tariff Act of 1922 rather than as "woven fabrics" under paragraph 1109 or "manufactures, not specially provided for" under paragraph 1119.

2. SAME—TRADE NAMES, ETC., AS AFFECTING CLASSIFICATION.

The fact that the merchandise is known in the trade as "paper-makers' felt," "drier felt," and "woolen felt," or that it is not manufactured or furnished by Fourdrinier machine manufacturers, or that it is used as integral parts of other machines, not specially provided for elsewhere, does not preclude its classification as parts of machines.

3. MACHINES—INTEGRAL PARTS.

The articles involved can not perform their proper functions until attached to a paper-making machine. The machine is incapable of performing one of its important, ordinary, and proper functions without the aid of the "paper-makers' felt." Each is dependent upon the other. Accordingly, the articles in question are, at least for tariff purposes, integral parts of the machine.

It is conceded that bracing clips are not used in many of the ordinary uses of a building shore; the testimony shows that uses of bracing clips are confined to the heavy construction industry, such as box girder construction and highway construction work, such as curves, banks, cloverleafs, under bridges, or, where the shore is double-decked, a bracing clip on the top insert tube and a bracing clip on the bottom insert tube, providing for two-way diagonal bracing, is required. The purpose of such diagonal bracing is to avoid possible side-sway and slippage.

This meets the test that such bracing clips are dedicated to a specific use and become an integral, constituent, and component part of the building shore, without which the building shore, to which it is to be attached or joined, could not function as such article. It is difficult to conceive, where bracing clips prevent building shores from swaying and slipping, how such uses could be regarded as optional. In fact, the testimony of the sole witness indicates the use of the bracing clips in such cases becomes mandatory.

It is the opinion of the writer, therefore, that a building shore, without the aid of a bracing clip, when used in conjunction with the heavy construction industry, is incapable of performing one of its important, ordinary, and proper functions. Each is dependent on and implements the other.

If the sole use of the bracing clips was to provide a temporary scaffold so that workers could make their final adjustments on beams, I would be inclined to join the majority opinion. Such a use I regard as a fugitive one.

The pronouncements hereinbefore quoted appear to point to the proper conclusion in this case. Based upon the present record and following the above pronouncements, I would hold the subject merchandise to be properly dutiable at the rate of 13¾ per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as modified, *supra*, as parts of machines, not specially provided for, as alleged by the plaintiffs.