(C. D. 1948)

GENERAL CHAIN & BELT CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 24, 1957)

*Tompkins & Tompkins (Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Plaintiff imported certain so-called extractors which are used for the purpose of pushing the connecting pins out of lengths of chain, so that the chain may be taken apart by the removal of one or more links.

The collector of customs classified the importation as articles in chief value of metal, not specially provided for, in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and duty was imposed thereon at the rate of 22½ per centum ad valorem.

Plaintiff relies upon the claim that the articles should be classified as machines in paragraph 372 of said act (19 U. S. C. § 1001, par. 372), as modified by the Torquay protocol to said general agreement, 86 Treas. Dec. 121, T. D. 52739, and subjected to duty at the rate of 13¾ per centum ad valorem.

The pertinent text of the competing statutes is set forth below.

Paragraph 397, as modified, *supra*—

Articles or wares not specially provided for, whether partly or wholly manufactured:

   \*       \*       \*       \*     ·   \*       \*       \*

     Other (except slide fasteners and parts thereof) _____ ₂22½% ad val.

Paragraph 372, as modified, *supra*—

Machines, finished or unfinished, not specially provided for:

   \*       \*       \*       \*     ·   \*       \*       \*

     Other (\* \* \*) _____ 13¾% ad val.

The sole witness in the case, Joseph Joy, managing director of the plaintiff company, was called to testify on behalf of the importer.

The record discloses that the merchandise in controversy, as represented by collective exhibit 1, employs the principle of the lever, spring, and screw. To describe the principal parts of exhibit 1 and their functions, we quote from plaintiff's brief as follows:

\* \* \* The jaws of the extractor close automatically into a correct position over the pin in a link chain when the squeezing action of the hand on the lever handles is stopped, the automatic feature being performed by the action of stored-up energy in a spring. Then when the capstan on the top of the extractor is rotated by hand the rotational force is magnified about 900 times into a downward or vertical pressure on the pin by means of a screw leverage employing the mechanical principle of the wedge or inclined plane \* \* \*, thus forcing out the pin \* \* \*.

Thus it will be seen that manual force applied to the bar causes the capstan to turn the screw, magnifying the force of the screw about 900 times. Obviously, the energy or force which was applied to the capstan through manual pressure on the bar is transmitted through the screw, the initial energy applied being magnified 900 times.

Defendant relies upon the decision of our appellate court in *United States* v. *Associated Mfg. Co.*, 30 C. C. P. A. (Customs) 236, C. A. D. 238, which involved the dutiable classification of tricycles. After referring to the definition of a machine, contained in the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, as "a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion," which was recognized as correctly defining the term "machine," the court stated that, in a very broad sense, "it never was intended to mean that every mechanical contrivance which utilizes or applies or

modifies energy or force or for the transmission of motion must be considered in a tariff sense a machine." Citing authorities.

The court then pointed out that, whereas the tricycles before it were mechanical contrivances, it could not be said that they utilized energy or force, but rather that they are merely moved, carrying their riders by means of the force exerted on the pedals which turn the front wheel one revolution to every revolution made by the pedals. The court there said: *"Energy or force is applied to the tricycle, but is not utilized by it."* [Emphasis supplied.]

Further, the court remarked:

* * * Neither does it modify force or energy for the reason that the foot power necessary to turn the front wheel is not changed or modified in any respect by the apparatus. A tricycle such as here involved is not a mechanical contrivance for the transmission of motion.

It was accordingly held that the tricycle there in controversy was not a machine in the sense of paragraph 372.

Plaintiff rests its case on the decisions of our appellate court in *Simon, Buhler & Baumann (Inc.)* v. *United States, supra,* and *United States* v. *Guth Stern & Co., Inc.,* 21 C. C. P. A. (Customs) 246, T. D. 46777, and cites numerous other cases decided by this court and the appellate court which it deems decisive of the issue as to what constitutes a machine—our special attention being invited to the cases of *Braun Corp.* v. *United States,* 65 Treas. Dec. 387, T. D. 46938; *Acrow, Incorporated, and Frank P. Dow Co., Inc.* v. *United States,* 32 Cust. Ct. 356, Abstract 57727; and *P. H. De Wilde and Harper, Robinson & Co.* v. *United States,* 35 Cust. Ct. 295, Abstract 59420.

In the *Braun* case, *supra,* a sodium wire press, represented by a photograph of the article inserted in the opinion of the court, was described in the opinion as follows:

* * * It weighs about 65 to 70 pounds, and is composed entirely of iron or steel. As to its use and method of use the witness testified it is used for making sodium wire out of sodium balls as follows:

A ball of sodium is dropped into the die, and the pressure applied by screw forcing it out through the die into round wire or ribbon wire.

This is done by hand. The screw is used for applying the power "to press the material through the small orifice." The function of the horizontal arm at the top with the balls on the end is "for the operator to turn the screw." On turning the arms down the screw presses against the "mangle which goes into the die proper, pressing against the sodium." He described the so-called "mangle" as "a machine in the frame of the machine acting as a plunger in a cylinder." * * *

The court then referred to certain other articles operated by means of a spiral screw, which were held to be machines:

A meat-grinding machine, containing a spiral screw which when revolved by a handle or crank "forces the material along, and incidentally to some extent crushes it". *Martin B. Jager* v. *United States,* Abstract 48421, 46 Treas. Dec. 767.

A spectrographic comparator actuated by means of a hand crank and gears, which turned a longitudinal lead screw and moved a carriage back and forth. *G. W. Sheldon & Co.* v. *United States*, 59 Treas. Dec. 478 [T. D. 44665]. * * *

The *Acrow* case, *supra*, related to implements described as shores or jacks, which were used on certain jobs to raise or lower heavy panels or forms into which concrete was to be poured. According to a witness in that case—

* * * A wall could be pushed or could be brought back by turning the handle of the shore or jack. The forms that were moved on one job were 30 feet high and extremely heavy. When concrete is poured into the form, terrific pressure is exerted, requiring another adjustment. When the involved shore is used, this situation is taken care of by jack action in the shore.

The merchandise was described, in the opinion of the court in that case, as having consisted of two metal tubes of varying length, so constructed that one fitted very closely inside the other. On the outside of the larger tube were square-cut threads, upon which was screwed a nut or collar having similarly cut threads and having a hinged handle which, in turn, caused the nut or collar to travel up or down the tube, thus transforming motion which was imparted in a horizontal direction into vertical motion. It was the opinion of the court that the device was properly classifiable as a machine.

The *De Wilde and Harper* case, *supra*, related to so-called "Sevo vices." To quote from the opinion of the court in that case—

In explaining the difference between an ordinary vise and the Sevo, the witness stated:

> * * * an ordinary vise has two straight sets of jaws where this sevo vise has three sets of laminated jaws which are independently hinged so as to give a three point suspension compared to a two point suspension with a conventional type of vise. * * * The vise is particularly suited to hold a nut-shaped object. * * * the jaws are so arranged that through laminations they go around the work and can then be locked like cams in a rigid position so as to furnish a jig for small products.

To quote further from the opinion of the court in that case—

In explaining the operation of these vises, the witness testified that:

> The operator operates the crank handle which in turn slides the jaws, the jaws adjust themselves around the shaped object, around the piece to be worked and then are bolted by cam action by way of handles and an eccentric and from there on in after the jaws are set, he only moves the set of jaws to facilitate the taking out of the work piece.

The court reached the conclusion that its decision therein should be governed by the reasoning and the authorities set out in the *Acrow* case, *supra*.

In passing, it may be noted that a pamphlet, marked "Exhibit # 1," illustrating the Sevo device, is in the files of the court in the *De Wilde* case.

There would seem to be little, if any, difference in principle in the functional character of the hand-operated sodium press in the *Braun*

case, the jacks or building shores in the *Acrow* case, or the Sevo vises in the *De Wilde* case, on the one hand, and the hand-operated extractors in the case at bar. In each of the cases, the principle of the lever and the screw is employed which results, in the instant case, in magnifying the force applied approximately 900 times.

A material difference, therefore, between the extractor here in controversy and the tricycle before the court in the *Associated Mfg. Co.* case is that the tricycle did not apply force or energy—force or energy was applied to it. Neither did the tricycle transmit motion, whereas the extractor does modify force or energy and transmit motion.

In view of the undisputed facts of record and based upon the authorities cited by plaintiff, we find and hold that the subject merchandise should be classified as machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930, as modified, *supra*, and subjected to duty at the rate of 13¾ per centum ad valorem, as claimed by the importer.

To that extent, the protest is sustained and judgment will be entered accordingly.